Case 1:11-cv-02430-WYD-KMT Document 11-2 Filed 11/22/11 USDC Colorado Page 1 of 10

Get a Document - by Citation - 2010 U.S. Dist. LEXIS 51425

Switch Client | Preferences | Help | Sign Out

| My Lexis™ | Search | Get a Document | Shepard's® | More | History |
|---|---|---|---|---|---|
| | | | | | Alerts |

FOCUS™ Terms [_____] Go    Advanced...   Get a Document [_____] Go    View Tutorial

Service: **Get by LEXSEE®**
Citation: **2010 U.S. Dist. Lexis 51425**

*2010 U.S. Dist. LEXIS 51425, ***

Christine Baker, Plaintiff, vs. Trans Union LLC; Trans Union Interactive Inc.; Verifacts Inc.; Stacy Aull; Jane Doe, Defendants.

No. CV-10-8038-PCT-NVW

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

2010 U.S. Dist. LEXIS 51425

May 25, 2010, Decided
May 25, 2010, Filed

**CORE TERMS:** consumer, consumer report, collection, reporting, disclosure, collector, leave to amend, entity, reinvestigation, negligently, willfully, incorrect, telephone, attorneys' fees, inaccurate, reseller, actual damages, disclose, notice, credit report, skip-tracer, gathering, telegram, furnish, collection agencies, fails to comply, indirectly, disputed, abusive, intend

**COUNSEL:** [*1] Christine Baker, Plaintiff, Pro se, Kingman, AZ.

For Trans Union, LLC, Defendant: Philip R Wooten ✓, Philip R Wooten PC, Phoenix, AZ; Tiffany L Cox ▼, Strasburger & Price LLP, Frisco, TX.

**JUDGES:** Neil V. Wake ▼, United States District Judge.

**OPINION BY:** Neil V. Wake ▼

**OPINION**

**ORDER**

On October 16, 2009, Plaintiff Christine Baker sued Defendants Trans Union LLC ("Trans Union"), Trans Union Interactive Inc. ("TU Interactive"), Verifacts Inc. ("Verifacts"), Stacy Aull, and Jane Doe for various alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Now before the Court are Defendants Trans Union and TU Interactive's Motion to Dismiss (doc. # 4), and Defendants Verifacts, Stacy Aull, and Jane Doe's Motion to Dismiss (doc. # 10). Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a

claim.

## I. Legal Standard

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible if it contains **[*2]** sufficient factual matter to permit a reasonable inference that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Therefore, while all of the plaintiff's factual allegations are accepted as true, mere legal conclusions are not. *Id.* In determining the factual allegations, generally only the face of the complaint and any attached exhibits may be considered. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005). However, under the incorporation by reference doctrine, any documents "whose contents are alleged in [the] complaint and whose authenticity no party questions" may also be considered. *Id.*

## II. Factual Allegations

### A. Trans Union & TU Interactive

Defendant Trans Union is a consumer reporting agency. On July 1, 2009, Plaintiff Christine Baker attempted to order her consumer report on Trans Union's website. However, all links for consumer reports transferred her to TrueCredit.com. TrueCredit is owned and operated by TU Interactive, a reseller of credit data, and is primarily a marketing tool for various credit-related businesses. Unable to order her consumer report **[*3]** on Trans Union's website, Baker signed up for TrueCredit monitoring and ordered a consumer report from TrueCredit. What she received was a report that did not indicate the estimated deletion dates for "derogatory data" and did not disclose promotional and account review credit inquiries. It also contained "the incorrect alias 'Christian Baker', incorrect addresses and other incorrectly reported data." Finally, the report reflected an April 24, 2009 credit inquiry by Verifacts, an entity in the business of skip-tracing on behalf of debt collectors.

That same day, Baker contacted Trans Union's attorney Tiffany Cox of Strasburger & Price LLP to dispute the incomplete, inaccurate consumer report and to request the permissible purpose for the Verifacts credit inquiry. Ms. Cox responded:

> ...
>
> 3. The TrueCredit report attached to your email is a "credit report" not a "disclosure" and will not contain all the information found in a disclosure;
>
> ...
>
> 5. Trans Union is still reinvestigating the 4/24/09 Verifacts inquiry and will supplement this response when more information is available.
>
> ...

After receiving the response, Baker sent an email to Ms. Cox in which she again requested the permissible purpose for **[*4]** the Verifacts credit inquiry, asked for the source of the incorrect information in the report, asked where she could obtain a complete "Trans Union consumer disclosure (credit report)," and requested a refund of the fees she paid to TrueCredit. To date, she has received no response. When Baker contacted TrueCredit directly to request a refund, her request was declined.

To date, Trans Union has neither corrected Baker's consumer report nor identified the source of

the incorrect information. Furthermore, instead of informing Baker of the permissible purpose for the Verifacts inquiry, it simply deleted the inquiry. Baker was "especially upset" that the report reflected the alias "Christian Baker" as it was the subject of previous litigation. She believes that Trans Union deliberately added false information to her consumer report "to cause her aggravation and stress in retaliation for her previous litigation."

### B. Verifacts, Stacy Aull & Jane Doe

According to its website, Verifacts is "[t]he Specialist in the Science and Art of Skip Tracing" and "provid[es] the credit/collections industry with high quality location information" partly through "expert phone inquiry." On or about May 22, 2009, **[*5]** a Jane Doe from Verifacts called Baker and attempted to obtain her address. When Baker inquired as to the purpose of the inquiry, Jane Doe informed her that she was updating their database for creditors and, after refusing to provide further information, gave Baker the telephone number for Verifacts. When Baker called Verifacts, she spoke with Stacy Aull, who denied being in the collections business and insisted that she had a right to call consumers without identifying herself as a collector. Neither Jane Doe nor Stacy Aull identified themselves as collectors, neither informed Baker of her right to dispute pursuant to 15 U.S.C. § 1692g, and neither disclosed that all information she provided would be used to collect debts.

After Baker saw the April 24, 2009 Verifacts credit inquiry on her TrueCredit consumer report on July 1, 2009, she faxed a request for the permissible purpose for the inquiry directly to Verifacts. She received no response.

### III. Analysis

### A. Trans Union

#### 1. 15 U.S.C. § 1681b

Baker first maintains that Trans Union "willfully and negligently sold [her] credit data to persons without permissible purpose" in violation of § 1681b, which permits consumer reporting agencies to **[*6]** furnish consumer reports to third parties only in limited circumstances, including, among others, in response to a court order, in accordance with written instructions from the consumer to whom the report relates, and to a person the agency has "reason to believe" intends to use the information for permissible purposes. *See* 15 U.S.C. § 1681b(a). As Trans Union points out, the Complaint does not specify whether the claim arises from Trans Union's release of Baker's credit data to TU Interactive, its release of her information to Verifacts, or both. According to Baker's Response, it arises from both.

As to TU Interactive, apart from the conclusory nature of the allegation, Baker cannot state a claim under § 1681b because she alleges that TU Interactive is a reseller of credit data. According to Federal Trade Commission ("FTC") commentary on the FCRA, consumer reporting agencies such as Trans Union are permitted to release credit information to third-party agencies who, in turn, intend to sell or otherwise release the information for permissible purposes. *See* 16 C.F.R. Pt. 600, App., § 604 General ("A consumer reporting agency may furnish a consumer report to another consumer reporting **[*7]** agency for it to furnish pursuant to a subscriber's request. In these circumstances, one consumer reporting agency is acting on behalf of another."). By alleging that TU Interactive is a reseller of credit information, Baker has pled herself out of a § 1681b claim arising from Trans Union's release of her information to TU Interactive. Moreover, to the extent Trans Union owns and operates TU Interactive, as Baker suggests in her Response, a transfer of consumer information between the two does not amount to the furnishing of a consumer report subject to the permissible purpose requirements of § 1681b. *See* 15 U.S.C. § 1681a(d)(2)(A)(ii) (excluding from the definition of "consumer report" any communication of consumer information "among persons related by common ownership or affiliated by corporate control").

The claim also fails with respect to Verifacts. Apart from the conclusory nature of the allegation, which renders the claim insufficient on its own, the sole basis for the claim is that Verifacts is "apparently not a collector," but rather a skip-tracer. The reasoning is flawed as a matter of law. Consumer reporting agencies are permitted to furnish consumer reports to persons they **[*8]** have reason to believe intend to use the credit information to collect a debt owed by the consumer. *See id.* § 1681b(a)(3)(A) ("review or collection of an account" is a permissible purpose). That permission extends to collection agencies and "detective agenc[ies] or private investigator[s]" alike. 16 C.F.R. Pt. 600, App., § 604(3)(A). Because skip-tracers are in the business of locating debtors to facilitate the collection of debts by creditors, their practices fall within the scope of permissible purposes under § 1681b(a)(3)(A). *See Baker v. Bronx-Westchester Investigations, Inc.,* 850 F. Supp. 260, 262 n.5 (S.D.N.Y. 1994) (finding no material distinction between hiring an investigator to actually collect a debt and hiring one merely to locate the debtor for purposes of debt collection). Baker has therefore failed to state a claim against Trans Union under § 1681b. Because the deficiencies cannot be cured, the claim will be dismissed without leave to amend. *See Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995) (court should grant leave to amend unless the pleading cannot be cured by the allegation of additional facts).

### 2. 15 U.S.C. § 1681e

Baker next alleges that Trans Union violated **[*9]** § 1681e(a) by "willfully and negligently fail[ing] to maintain reasonable procedures to avoid violations of § 1681b . . . ." Stating a claim under § 1681b is a prerequisite to asserting a claim under § 1681e(a) because without a § 1681b violation, there is no basis to challenge a consumer reporting agency's preventative procedures. *See Washington v. CSC Credit Servs. Inc.,* 199 F.3d 263, 266-67 (5th Cir. 2000) (purpose of § 1681e(a) "is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent."); *see also Hinton v. Trans Union, LLC,* 654 F. Supp. 2d 440, 450 (E.D. Va. 2009); *Harris v. Database Mgmt. & Mktg., Inc.,* 609 F. Supp. 2d 509, 517 (D. Md. 2009). As explained *supra,* Baker has incurably failed to state a claim against Trans Union under § 1681b. Therefore, her § 1681e(a) claim will similarly be dismissed without leave to amend.

Baker also contends that Trans Union violated § 1681e(b), which requires consumer reporting agencies, in preparing consumer reports, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." An agency that willfully fails to comply is liable **[*10]** for actual damages or damages not greater than $ 1,000, punitive damages, reasonable attorneys' fees, and costs. 15 U.S.C. § 1681n. An agency that negligently fails to comply is liable for actual damages, reasonable attorneys' fees, and costs. *Id.* § 1681o.

To make out a prima facie claim under § 1681e(b), a consumer must "show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991)). The agency can then escape liability by demonstrating that the inaccuracies were reported despite the agency's reasonable procedures. *Id.* Therefore, to state a claim, a consumer need only allege that the consumer reporting agency prepared an inaccurate report. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (citing *Cahlin,* 936 F.2d at 1156); *Baker v. Trans Union LLC,* No. CV 07-8032-PCT-JAT, 2008 U.S. Dist. LEXIS 93266, at *13-14, 2008 WL 4838714, at *5 (D. Ariz. Nov. 5, 2008); *Valentine v. First Advantage SafeRent, Inc.,* No. EDCV 08-142-VAP (JCRx), 2008 U.S. Dist. LEXIS 80764, at *4-5, 2008 WL 4367353, at *2 (C.D. Cal. Sept. 23, 2008). **[*11]** Trans Union contends that publication of the inaccurate information to a third party is a required element of the claim, but the Court is aware of no Ninth Circuit authority to that effect. To the contrary, the Ninth Circuit has indicated that transmission of the report to third parties is not a prerequisite to establishing liability under § 1681e(b). *See Guimond,* 45 F.3d at 1333.

Baker's allegation that her consumer report included "the incorrect alias 'Christian Baker', incorrect addresses and other incorrectly reported data" is therefore sufficient to state a prima

facie claim under § 1681e(b) at this early stage in the proceeding. She has not, however, sufficiently pled actual damages. While emotional distress and humiliation do fall within the scope of actual damages for purposes of the FCRA, see *Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1069 (9th Cir. 2008); *Guimond,* 45 F.3d at 1333, there is no allegation that Baker suffered emotional distress or humiliation. The Complaint states only that she was "especially upset," and while it also states that she believes Trans Union deliberately added false information to her credit report "to cause her aggravation and stress," it fails to allege **[*12]** that Baker did in fact suffer aggravation and stress. Because these deficiencies are curable, however, the claim is dismissed with leave to amend.

### 3. 15 U.S.C. § 1681g

Baker also alleges that Trans Union "willfully and negligently failed to provide consumer disclosures" in violation of § 1681g, which requires all consumer reporting agencies to clearly and accurately disclose to the consumer, upon request, all information in the consumer's "file," sources of the information, the identities of certain recipients of the consumer's "consumer report," and other credit-related information outlined in the provision. See 15 U.S.C. § 1681g(a).

The claim fails because while Baker has alleged that she requested a consumer *report* from Trans Union, she has made no allegation that she requested a consumer *disclosure* from Trans Union. Though she alleges that she asked Trans Union's attorney, Tiffany Cox, where she could obtain a complete "Trans Union consumer disclosure (credit report)," asking *where* one can obtain a consumer disclosure is not the equivalent of an actual request for a disclosure.

Moreover, the inquiry reveals a more fundamental flaw in the claim. That Baker asked where she could obtain **[*13]** a complete "consumer disclosure (credit report)" reflects her misunderstanding of the distinction between consumer disclosures and consumer reports. The text of the FCRA and FTC commentary thereon indicate that the two are not one and the same. See *Nunnally v. Equifax Info. Servs., LLC,* 451 F.3d 768, 772-73 (11th Cir. 2006). Section 1681g(a)(3)(A) is itself evidence of the distinction in that it requires consumer reporting agencies, as part of the disclosure, to reveal the identities of certain recipients of the individual's "consumer report." Furthermore, the term "file," as used in § 1681g(a), is defined as all consumer information recorded and retained by the consumer reporting agency, regardless of how the information is stored. 15 U.S.C. § 1681a(g). As clarified by FTC commentary, the term "denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer," indicating that consumer reports contain a subset of the information in the consumer's file. 16 C.F.R. Pt. 600, App., § 603(g). Finally, 15 U.S.C. § 1681i(a)(6)(B)(ii) requires consumer reporting agencies **[*14]** to provide consumers with a consumer report "based upon" the consumer's file after a reinvestigation. If they were one and the same, the terms would be redundant. *See Nunnally,* 451 F.3d at 773. Because Baker's claim is apparently premised on the faulty assumption that consumer disclosures are the equivalent of consumer reports, the claim is dismissed without leave to amend.

### 4. 15 U.S.C. § 1681i

Baker finally asserts that Trans Union "willfully and negligently failed to provide complete and correct consumer reports after receiving factual disputes" in violation of § 1681i. Pursuant to 15 U.S.C. § 1681i(a)(1)(A):

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the

end of the 30-day period beginning on the date on which the agency receives the notice of the dispute **[*15]** from the consumer or reseller.

The agency must also provide "written notice to a consumer of the results of a reinvestigation" as well as "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation" within 5 business days of the completion of the reinvestigation. *Id.* § 1681i(a)(6)(A), (B). As explained *supra,* an agency that willfully fails to comply is liable for actual damages or damages not greater than $ 1,000, punitive damages, reasonable attorneys' fees, and costs. 15 U.S.C. § 1681n. An agency that negligently fails to comply is liable for actual damages, reasonable attorneys' fees, and costs. *Id.* § 1681o.

Baker alleges that the consumer report she received from TrueCredit did not identify the estimated deletion dates for "derogatory data," did not disclose promotional and account review credit inquiries, reflected an April 24, 2009 credit inquiry by Verifacts, and contained "the incorrect alias 'Christian Baker', incorrect addresses and other incorrectly reported data." She also alleges that she disputed the completeness and accuracy of the data with Trans Union's attorney Tiffany Cox, who responded, in part:

> ...
>
> 3. The TrueCredit **[*16]** report attached to your email is a "credit report" not a "disclosure" and will not contain all the information found in a disclosure;
>
> ...
>
> 5. Trans Union is still reinvestigating the 4/24/09 Verifacts inquiry and will supplement this response when more information is available.
>
> ...

Finally, she alleges that Trans Union subsequently deleted the Verifacts inquiry but has neglected both to correct some of the inaccuracies and/or provide the source of the inaccurate information.

Trans Union argues that Baker cannot state a claim because her contact with Ms. Cox did not constitute notification of the dispute to Trans Union directly or indirectly through a reseller of credit information, as required by § 1681i(a)(1)(A). The argument is unpersuasive, at least in this particular case. Whether or not notice provided to a credit reporting agency's attorney satisfies the notice requirements of § 1681(a)(1)(A) in a technical sense, it is evident that Ms. Cox did in fact communicate the dispute to Trans Union because her response letter informed Baker that Trans Union's reinvestigation was underway.

However, Baker's allegations are deficient. To the extent the claim is predicated on Trans Union's failure **[*17]** to conduct a reinvestigation, it states no claim because it is apparent from the above allegations that Trans Union did initiate a reinvestigation upon receiving notice of Baker's dispute. Furthermore, Baker has not alleged that Trans Union neglected to provide her with written notice of the results of the reinvestigation or a revised consumer report based on her consumer file after the reinvestigation. The only relevant allegation is that Trans Union failed to correct some of the inaccuracies subsequent to the reinvestigation. This vague contention is insufficient to state a claim because it fails to specify exactly what inaccurate information Trans Union failed to correct. Baker refers to a Barclays Bank account in her Response, but no such reference is made in the Complaint itself. Furthermore, the claim suffers the same deficiency with respect to actual damages as does the § 1681e(b) claim. Because the deficiencies can be cured, however, the claim will be dismissed with leave to amend.

**B. TU Interactive**

**1. 15 U.S.C. § 1681b**

According to the Complaint, TU Interactive violated § 1681b because it "willfully and negligently obtained Baker's credit data" from Trans Union despite having **[*18]** "no permissible purpose" to do so. Section 1681b(f) prohibits a person from obtaining a consumer report for purposes other than those outlined in § 1681b(a). As already explained, Trans Union's release of Baker's consumer report to TU Interactive was permissible because TU Interactive is allegedly a reseller of credit information. If TU's purpose for releasing the information was permissible, so was TU Interactive's purpose in obtaining it. Moreover, as also explained, TU Interactive is exempt from the permissible purpose requirements of § 1681b to the extent it is owned and/or operated by Trans Union. Baker's § 1681b claim against TU Interactive is therefore incurably deficient and will be dismissed without leave to amend.

**2. 15 U.S.C. § 1681g**

Baker also alleges that TU Interactive "willfully and negligently sold incomplete consumer disclosures" in violation of § 1681g, which, as mentioned, requires all consumer reporting agencies to clearly and accurately disclose to the consumer, upon request, all information in the consumer's "file," sources of the information, the identities of certain recipients of the consumer's "consumer report," and other credit-related information outlined **[*19]** in the provision. *See* 15 U.S.C. § 1681g(a).

Nowhere in the Complaint does Baker allege that she ordered and obtained an incomplete consumer *disclosure* from TU Interactive. She alleges only that the consumer *report* she received from TU Interactive failed to disclose the estimated deletion dates for "derogatory data" and failed to include promotional and account review credit inquiries. As explained *supra,* consumer reports are distinct from consumer disclosures. Because Baker's § 1681g claim is again premised on a misunderstanding of the relationship between the two, the claim will be dismissed without leave to amend.

**C. Verifacts, Stacy Aull & Jane Doe**

**1. 15 U.S.C. § 1681b**

Baker alleges that Verifacts "willfully and negligently obtained Baker's Trans Union credit data" in violation of § 1681b, which prohibits a person from obtaining a consumer report for purposes other than those outlined in § 1681b(a). 15 U.S.C. § 1681b(f). As discussed earlier with respect to Baker's § 1681b claim against Trans Union, persons who intend to use credit information to collect a debt owed by the consumer have a permissible purpose in acquiring the information from consumer reporting agencies. *See id.* § 1681b(a)(3)(A) **[*20]** ("review or collection of an account" is a permissible purpose). Because skip-tracers are in the business of locating debtors to facilitate the collection of debts by creditors, their practices fall within the scope of permissible purposes under § 1681b(a)(3)(A). Therefore, Baker's § 1681b claim against Verifacts will be dismissed without leave to amend.

**2. FDCPA**

The FDCPA regulates the conduct of debt collectors. Verifacts, Stacy Aull, and Jane Doe argue that Baker has failed to state a claim under the FDCPA because Verifacts is not a debt collector subject to FDCPA requirements. Although a close question, the Court concludes that Verifacts does fall within the definition of "debt collector" and therefore is subject to the FDCPA.

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The term "debt collector" is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in [*21] any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* § 1692a(6). An entity must therefore comply with the FDCPA if it (1) is principally in the business of debt collection or (2) regularly attempts to collect debts, either directly or indirectly. *See Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142, 1145 (9th Cir. 1998).

The Ninth Circuit has explained that a determination of whether an entity falls within the definition of "debt collector" for purposes of the FDCPA depends not on the entity's organizational label, but rather on the nature of its activities. *See Romine,* 155 F.3d at 1149. In *Romine,* the court found the FDCPA applicable to an entity in the business of providing Automated Voice Telegram ("AVT") service, through which it obtains debtors' telephone numbers by eliciting responses to personal delivery telegrams and then communicates the numbers to creditors and collection agencies. *Id.* at 1143, 1149. After breaking down the definition of "debt collector" into its two prongs, the court looked to whether the [*22] entity's activities amounted to a direct or indirect attempt to collect a debt. *Id.* at 1145. Noting that the entity advertised its AVT service as "specially developed for the credit and collections industry," that it obtained telephone numbers specifically for creditors and collectors through deceptive means, and that it used the urgency of telegrams to "catalyze debt collection," the court determined that the entity's activities went "beyond mere information gathering or message delivery" and were "of the type that the FDCPA was designed to deter." *Id.* at 1147, 1149. In response to the entity's argument that the court's ruling would "bring a host of service providers within the statute's reach, including mailing services, private investigators, *skip tracers,* online personal locator services, and other services that aid or facilitate the collections process," the court expressly declined to decide whether those service providers are considered debt collectors and merely reiterated its conclusion that such a determination "would depend upon the nature of the activities in the individual case." *Id.* at 1149 (emphasis added).

As a skip-tracer, Verifacts is not engaged in a business the [*23] principal purpose of which is the collection of debt because it merely gathers location information for use by the collections industry. It has no direct interest in the debt to be collected. *See id.* at 1145 (debt collection was not the principal purpose of the entity at issue because it merely obtained debtors' contact information). Therefore, Verifacts is not a "debt collector" under the first prong of the definition. Whether it qualifies as a "debt collector" under the second prong, however, is a closer question.

On the one hand, Verifacts advertises itself as an entity that "provid[es] the credit/collections industry with high quality location information" partly through "expert phone inquiry." Because seeking out a debtor's current location furnishes an indispensable link in the debt collection process, Verifacts' system of telephone inquiry may be construed as indirect debt collection. Moreover, telephone practices are within the realm of debt collection practices sought to be regulated by the FDCPA. *See* 15 U.S.C. § 1692d (abusive practices include "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, [*24] or harass any person . . . ."). A policy of prohibiting debt collection agencies from engaging in abusive telephone practices while allowing skip-tracers to do so is questionable.

On the other hand, it is difficult to see how Verifacts' alleged conduct surpasses the "mere information gathering" implicitly deemed insufficient by the Ninth Circuit to bring an entity within the FDCPA's coverage. The AVT service at issue in *Romine* was grounded in blatant deception--it used the urgency of a voice telegram to induce the plaintiff to call in and provide his contact information in order to retrieve the "telegram," which amounted to no more than a pre-recorded message from a debt collection agency. 155 F.3d at 1144. In contrast, Jane Doe at Verifacts merely telephoned Baker and asked for her address outright. Though she did not immediately disclose the purpose of the inquiry, she did so when Baker prompted her for it. No deception was involved.

On balance, because Verifacts' alleged conduct appears to be no more than "mere information gathering," at least in this case, the Court concludes as a matter of law that it is not a "debt collector" for purposes of the FDCPA. At least two district courts **[*25]** have reached a similar conclusion. See Campbell v. Triad Fin. Corp., No. 5:07-CV-579, 2007 U.S. Dist. LEXIS 77623, at *26-27, 2007 WL 2973598, at *9 (N.D. Ohio Oct. 9, 2007); Goldstein v. Chrysler Fin. Co., 276 F. Supp. 2d 687, 690 (E.D. Mich. 2003).

Though the claims may theoretically be cured by alleging additional facts indicating that Verifacts' conduct exceeded the scope of mere information gathering, allowing Baker to amend the Complaint would be futile because none of her rather specific allegations even remotely reflects conduct that goes beyond mere information gathering. As such, the claims are dismissed without leave to amend.

### D. Attorneys' Fees

Though 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2), and 1692k allow a prevailing plaintiff to recover reasonable attorneys' fees for violations of the FCRA and the FDCPA, the provisions do not apply to pro se plaintiffs. See Burns v. Bank of Am., 655 F. Supp. 2d 240, 253 (S.D.N.Y. 2008); cf. Kay v. Ehrler, 499 U.S. 432, 438, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991) (pro se plaintiffs, regardless of whether they are attorneys, cannot recover attorneys' fees under 42 U.S.C. § 1988 because allowing them to do so "would create a disincentive to employ counsel" and "[t]he statutory **[*26]** policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel . . . ."). Because Baker is pro se, she cannot recover attorneys' fees under the FCRA and the FDCPA.

IT IS THEREFORE ORDERED that Defendants Trans Union LLC and Trans Union Interactive Inc.'s Motion to Dismiss (doc. # 4) is granted. With respect to Trans Union LLC, the Motion is granted without leave to amend as to the claims under 15 U.S.C. §§ 1681b, 1681e(a), and 1681g and granted with leave to amend until **June 7, 2010,** as to the claims under 15 U.S.C. §§ 1681e(b) and 1681i. With respect to Trans Union Interactive Inc., the Motion is granted as to all claims without leave to amend.

IT IS FURTHER ORDERED that Defendants Verifacts Inc., Stacy Aull, and Jane Doe's Motion to Dismiss (doc. # 10) is granted as to all claims without leave to amend.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action with prejudice after **June 7, 2010,** if Plaintiff does not file an amended complaint by June 7, 2010.

DATED this 25th day of May, 2010.

/s/ Neil V. Wake

Neil V. Wake

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2010 U.S. Dist. Lexis 51425**
View: Full
Date/Time: Tuesday, November 22, 2011 - 6:56 PM EST

* Signal Legend:
🔴 - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated

- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.