Case 1:11-cv-02430-WYD-KMT Document 11-3 Filed 11/22/11 USDC Colorado Page 1 of 9

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 8154

Switch Client | Preferences | Help | Sign Out

| My Lexis™ | Search | Get a Document | Shepard's® | More | History |
| --- | --- | --- | --- | --- | --- |
| | | | | | Alerts |

FOCUS™ Terms [____] Go   Advanced... Get a Document [____] Go   View Tutorial

Service: **Get by LEXSEE®**
Citation: **1998 U.S. Dist. Lexis 8154**

*1998 U.S. Dist. LEXIS 8154, \**

DARRELL REID WILSON, Plaintiff, v. ALBERT M. SESSOMS, individually and doing business as STREET & CO.; MAUREEN SESSOMS, individually and doing business as STREET & CO.; EQUIFAX CREDIT INFORMATION SERVICES, INC.; and CREDIT BUREAU OF GREATER GREENSBORO, INC., Defendants.

CIVIL NO. 4:96CV01031

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA, SALISBURY DIVISION

1998 U.S. Dist. LEXIS 8154

March 16, 1998, Decided
March 16, 1998, Filed

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff consumer filed an action against defendants, owners of a skip tracing company, credit bureau, and credit reporting agency, and alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C.S. § 1681 et seq. The consumer alleged that the owners accessed his credit report without a permissible purpose and alleged negligence on the part of the bureau and the reporting agency. The bureau and the agency sought summary judgment.

**OVERVIEW:** The court found that the consumer had not presented any evidence from which a reasonable juror could conclude that either the agency or the bureau had a reason to believe that the owners accessed his report for an improper purpose. It was undisputed that one of the owners certified to the bureau that the skip tracing company would seek consumer reports only for permissible purposes and that the owners understood what constituted a permissible purpose under the FCRA. In addition, the bureau understood that the company's primary business was skip tracing, which was a permissible purpose. The agency also acted reasonably as a matter of law because of the bureau's FCRA certifications to it. Neither the bureau nor the agency were negligent with respect to the oversight of the skip tracing company. Even though the owners denied accessing the consumer's report, there was no evidence to support that the report was accessed by an unknown party, who broke into the system, and the consumer's mere speculation was insufficient to overcome summary judgment. The agency and the bureau's certification procedures were reasonable as a matter of law and there was no willful violation of the FCRA.

Case 1:11-cv-02430-WYD-KMT Document 11-3 Filed 11/22/11 USDC Colorado Page 2 of 9

Case 1:11-cv-02430-WYD-KMT 1998 U.S. Dist. LEXIS 8154 Document 11-3 Filed 11/22/11 USDC Colorado Page 2 of 9

**OUTCOME:** The court granted the bureau's and the agency's motions for summary judgment.

**CORE TERMS:** consumer report, consumer, accessed, customer, reporting, summary judgment, pulled, computer systems, skip-tracing, improper purpose, subscriber, accessing, password, matter of law, impermissible, willfully violated, undisputed, codeword, verify, billed, stolen, authorization, non-moving, oversight, certify, genuine, willful, credit report, business purpose, private investigator

## LEXISNEXIS® HEADNOTES       ⊟ Hide

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants 

Civil Procedure > Summary Judgment > Standards > Appropriateness

Civil Procedure > Summary Judgment > Standards > Genuine Disputes

**HN1** Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of persuasion on the relevant issues. The non-moving party may survive a motion for summary judgment by producing evidence from which a jury might return a verdict in his favor. When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In considering all the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. More Like This Headnote

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview 

**HN2** The Fair Credit Reporting Act imposes on consumer reporting agencies the duty of following reasonable procedures to assure the accuracy of customer reports and limits uses for which a consumer report may be released. More Like This Headnote | *Shepardize:* Restrict By Headnote

Banking Law > Consumer Protection > Fair Credit Reporting > Consumer Reports 

Torts > Negligence > Standards of Care > Appropriate Standard > Objectivity

**HN3** Consumer reporting agencies are required to maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C.S. § 1681b and are prohibited from furnishing reports to a person which it has reason to believe will use the report for an improper purpose. 15 U.S.C.S. § 1681e(a). These procedures include requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. The standard of conduct for determining whether the consumer reporting agency maintained reasonable procedures is what a reasonably prudent person would do under the circumstances. More Like This Headnote | *Shepardize:* Restrict By Headnote

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview

**HN4** To establish willfulness, a plaintiff must show that the defendant acted under circumstances which amount to a willful or wanton disregard of the plaintiff's rights 

under the Fair Credit Reporting Act. More Like This Headnote

**COUNSEL: [\*1]** For DARRELL REID WILSON, plaintiff: JEFFREY S. LISSON, WINSTON-SALEM, NC.

ALBERT M. SESSOMS, defendant, Pro se, GREENSBORO, NC.

MAUREEN SESSOMS, defendant, Pro se, NORTH CHARLESTON, SC.

For EQUIFAX CREDIT INFORMATION SERVICES, INC., defendant: CHRISTOPHER C. FOX, KILPATRICK STOCKTON, L.L.P., WINSTON-SALEM, NC.

For CREDIT BUREAU OF GREATER GREENSBORO, INC., defendant: AMIEL J. ROSSABI, DENA BETH LANGLEY, ADAMS KLEEMEIER HAGAN HANNAH & FOUTS, GREENSBORO, NC.

For CREDIT BUREAU OF GREATER GREENSBORO, INC., cross-claimant: AMIEL J. ROSSABI, DENA BETH LANGLEY, ADAMS KLEEMEIER HAGAN HANNAH & FOUTS, GREENSBORO, NC.

ALBERT M. SESSOMS, cross-defendant, Pro se, GREENSBORO, NC.

MAUREEN SESSOMS, cross-defendant, Pro se, NORTH CHARLESTON, SC.

For EQUIFAX CREDIT INFORMATION SERVICES, INC, cross-claimant: CHRISTOPHER C. FOX, KILPATRICK STOCKTON, L.L.P., WINSTON-SALEM, NC.

**JUDGES:** Frank W. Bullock, Jr., United States District Judge.

**OPINION BY:** Frank W. Bullock, Jr.

**OPINION**

*MEMORANDUM OPINION*

BULLOCK, Chief Judge

Plaintiff brought this action alleging that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* [1] Plaintiff alleges **[\*2]** that Defendants Albert M. Sessoms and his wife, Maureen Sessoms, individually and doing business as Street & Co., accessed Plaintiff's consumer report through Defendants Credit Bureau of Greater Greensboro, Inc., ("Credit Bureau") and Equifax Credit Information Services, Inc. , ("Equifax") without a permissible purpose. Plaintiff further alleges that Credit Bureau and Equifax negligently and willfully failed to maintain reasonable procedures to ensure that only those parties with a permissible purpose could access Plaintiff's consumer report.

**FOOTNOTES**

[1] The named defendants in Plaintiff's original complaint were Equifax, Inc., Albert Sessoms, and Maureen Sessoms doing business as Street & Co. The original complaint alleged violations of the FCRA. Plaintiff then filed an amended complaint which added Credit Bureau of Greater Greensboro, Inc., as a defendant. The amended complaint also added a state law tort claim against all defendants. Then, apparently after recognizing that Equifax, Inc., was an improper party, Plaintiff filed a second amended complaint which named Equifax Credit Information Services, Inc. , as a defendant. Plaintiff also took a

voluntary dismissal as to all claims against Equifax, Inc. Plaintiff's second amended complaint dropped the state law tort claim, leaving only the FCRA claim against the remaining defendants.

[*3] Before the court are Credit Bureau's and Equifax's motions for summary judgment. [2] Credit Bureau and Equifax each contend that they are entitled to judgment as a matter of law because all evidence indicates that Plaintiff's consumer report was pulled for a permissible purpose and, even if the report was pulled for an impermissible purpose, they maintained reasonable procedures to ensure that consumer reports would be obtained only for permissible purposes. For the following reasons, the court will grant both Credit Bureau's and Equifax's motions for summary judgment.

**FOOTNOTES**

[2] Also before the court are: Plaintiff's motion to strike Roch Smith, Jr., as an expert upon whom Defendants may rely [Doc. # 53]; Equifax's and Credit Bureau's motions to strike Robert Biggerstaff and David Szwak as experts upon whom Plaintiff may rely [Docs. # 60, 63]; and Equifax's and Credit Bureau's motions for sanctions pursuant to Rule 11 against Plaintiff [Docs. # 87, 74]. Although not discussed in this opinion, the court will deny the parties' respective motions to strike expert testimony. The court will also deny Equifax's and Credit Bureau's motions for sanctions.

[*4] FACTS

The following facts are established in the pleadings, affidavits, deposition testimony, and exhibits offered by the parties. Where there are disputes, each party's position is given.

Equifax and Credit Bureau are consumer reporting agencies as defined in the FCRA in that they regularly engage, in whole or in part, in the practice of assembling or evaluating consumer credit information for the purpose of producing consumer reports to third parties. See 15 U.S.C. § 1681a(f). Equifax is in the business of receiving consumer credit histories from credit grantors and storing them via computer database. Independent credit reporting agencies, like Defendant Credit Bureau, enter into contracts permitting them to use Equifax's computer systems. Credit Bureau, in turn, sells access to this data to its various customers.

Equifax and Credit Bureau have entered into an agreement which provides that Credit Bureau is deemed to own the credit data for all consumers within Credit Bureau's territory, which includes five counties in North Carolina and two counties in Virginia. In essence, Credit Bureau owns and controls all of the data on the consumers for these counties, and Equifax provides [*5] computer facilities by which Credit Bureau stores its information. Credit Bureau's agreement with Equifax obligates Credit Bureau to comply fully with the FCRA and to conduct background checks on its customers to assure that its customers also comply with the FCRA. The agreement also requires that Creditor Bureau perform credit check and background investigation on Credit Bureau's new prospective customers; verify on customer applications that the customers are obtaining credit data only for permissible purposes as defined by the FCRA; conduct on-site inspections of its new business customers; and obtain a written agreement for service from every customer which agreement includes requirements necessary to meet all federal and state regulations applicable to the credit reporting industry.

Credit Bureau has done business with Equifax through a series of previous agreements for many years prior to its existing agreement. In all the years that Credit Bureau has purchased data from Equifax, Credit Bureau has received only one complaint indicating that a Credit Bureau customer had pulled a credit report for an impermissible purpose. This complaint was some ten- to-twelve years ago.

Credit [*6] Bureau has thousands of customers with whom it has signed agreements which allow the customers to access Credit Bureau's consumer data on Equifax's computer system. Two of these customers were Defendants Albert and Maureen Sessoms. The Sessoms, who do business as Street & Co., entered into agreements with Credit Bureau in the fall of 1984 which indicate that Street & Co. conducted business in insurance investigations. In these agreements the Sessoms certify that they would comply with all provisions of the FCRA, including but not limited to the provisions which require that they access Credit Bureau data for permissible purposes only. The Sessoms were also made aware that if they accessed a report under false pretenses and for an impermissible purpose they would be in violation of the criminal provisions of the FCRA and could be fined in an amount up to $ 5,000.00 and/or be imprisoned for up to one year. At his deposition, Albert Sessoms stated that he knew that credit reports could be pulled only for permissible purposes and that he has studied the FCRA.

Sessoms was not successful in the insurance investigation business and moved into the business of skip-tracing. As a skip-tracer, [*7] Street & Co. worked primarily with banks, credit unions, and financial institutions to locate consumers who had "skipped" on their loans. While the skip-tracing business did differ from the original insurance investigation business, Credit Bureau understood that skip-tracing was in fact what Street & Co. was doing. [3] In addition, approximately six or seven years ago, Credit Bureau requested and obtained from Street & Co. all of Street & Co.'s business forms, including its skip-tracing forms, to verify its permissible business purpose. There is no evidence that Credit Bureau or Equifax had ever received any complaints, nor that Credit Bureau or Equifax had any reason to believe, that Street & Co. had accessed a consumer report for an impermissible purpose until Plaintiff's complaint.

### FOOTNOTES

[3] Indeed, Miller, the vice-president of Credit Bureau, was not aware that Sessoms had ever intended to conduct insurance investigations and understood that skip-tracing had been Street & Co.'s intended business purpose from the beginning.

[*8] In 1996, Plaintiff became involved in litigation in the state courts of North Carolina which arose from his work as head of security for a company which provided money management services for a family from Colombia, South America. In this litigation, Plaintiff, along with a number of other defendants, are accused of misconduct related to the embezzlement and/or misappropriation of tens of millions of dollars. In this same time period, Plaintiff twice found a private investigator trespassing on his property. Plaintiff believes that the private investigator is involved in or was hired because of the state court litigation.

As a result of his encounter with the private investigator and based on the allegations made against him in the state court litigation, Plaintiff decided to check his credit report. The inquiry section on the report, which identifies all parties who have accessed the report in the preceding six months, indicated that Street & Co. had accessed his report on October 2, 1996. However, after Plaintiff confronted the Sessoms about the inquiry, the Sessoms denied that Street & Co. had ever accessed Plaintiff's report. On November 11, 1996, Plaintiff contacted Credit Bureau [*9] to investigate the matter further. Credit Bureau confirmed that Street & Co. had pulled Plaintiff's report because Street & Co.'s subscriber password and codeword were used to access the report via computer. Credit Bureau billed the Sessoms for accessing Plaintiff's report and the Sessoms paid the bill.

While the Sessoms deny that they pulled Plaintiff's report, it is undisputed that only the Sessoms had access to the two computers they used to connect to Equifax's computer system. Those computers are located in the Sessoms home. There is no evidence that the Sessoms' password and codeword have ever been stolen or compromised. Moreover, during the entire

Case 1:11-cv-02430-WYD-KMT Document 11-3 Filed 11/22/11 USDC Colorado Page 6 of 9

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 8154 Page 6 of 9

period that Street & Co. was a subscriber of Credit Bureau, the Sessoms never complained that their password had been stolen and never complained that they were billed for reports they did not access.

As a result of the investigation, Credit Bureau disconnected the Sessoms and Street & Co. from its service on November 13, 1996. Credit Bureau has not reconnected the Sessoms' service to date.

DISCUSSION

**HN1** Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment **[*10]** as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of persuasion on the relevant issues. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In considering all the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. Anderson, 477 U.S. at 255.

**HN2** The FCRA imposes on consumer reporting agencies, such as Equifax and Credit Bureau, the duty of following reasonable procedures to assure the accuracy of customer reports and limits uses for which a consumer report may be released. In this case, Plaintiff claims that Credit Bureau and Equifax willfully or negligently failed to maintain appropriate procedures to ensure that his report would be furnished only for a permissible purpose. See **[*11]** 15 U.S.C. §§ 1681b(3), 1681n, and 1681o. For the purposes of Equifax's and Credit Bureau's motions, the court will assume that Plaintiff's consumer report was furnished for an impermissible purpose.

The court will first address whether Plaintiff has raised a genuine issue of fact as to whether Equifax or Credit Bureau were negligent in allowing Plaintiff's consumer report to be accessed for an improper purpose. **HN3** Consumer reporting agencies are required to maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under Section 1681b and are prohibited from furnishing reports to a person which it has reason to believe will use the report for an improper purpose. See 15 U.S.C. § 1681e(a). These procedures include requiring "prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." Id. The standard of conduct for determining whether the consumer reporting agency maintained reasonable procedures is what a reasonably prudent person would do under the circumstances. See **[*12]** Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986), cert. denied, 483 U.S. 1022, 97 L. Ed. 2d 766, 107 S. Ct. 3267 (1987).

Plaintiff offers two alternative theories as to how Equifax and Credit Bureau were negligent in allowing his consumer report to be pulled for an improper purpose. First, based on the premise that Street & Co. pulled the report, Plaintiff argues that Equifax and Credit Bureau were negligent in connection with the authorization and oversight of Street & Co. Second, based on the premise that someone other than the Sessoms accessed his report, Plaintiff argues that Equifax and Credit Bureau lacked appropriate security measures to ensure that unknown individuals cannot break into the Defendants' computer systems.

Beginning with the authorization and oversight of Street & Co., Plaintiff has not presented any evidence from which a reasonable juror could conclude that either Equifax or Credit Bureau had a reason to believe that the Sessoms accessed Plaintiff's report for an improper purpose. It is undisputed that the Albert Sessoms certified to Credit Bureau that Street & Co. would seek consumer reports only for permissible purposes and that the Sessoms understood what constituted a permissible purpose **[*13]** under the FCRA. In addition, Credit Bureau

understood that Street & Co.'s primary business was skip-tracing, which is generally a permissible purpose under the FCRA. See 15 U.S.C. § 1681b(3)(A); *Korotki v. Attorney Servs. Corp., Inc.*, 931 F. Supp. 1269 (D. Md. 1996) (defendants attempting to collect an account of a consumer had a permissible purpose for obtaining the consumer report), aff'd, 131 F.3d 135 (4th Cir. 1997).

Under these circumstances, Credit Bureau clearly had a "reason to believe" that Street & Co. accessed Plaintiff's report for a permissible purpose. 15 U.S.C. § 1681b(a)(3). Numerous courts in virtually identical factual circumstances have held that consumer reporting agencies such as Credit Bureau in this case acted reasonably as a matter of law. See, e.g., *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982) (judgment granted in favor of consumer reporting agency where subscriber had certified that it would access reports for permissible purposes and where there was no showing that the consumer reporting agency had notice of subscriber's improper purpose for accessing the Plaintiff's report); **[*14]** *Klapper v. Shapiro*, 154 Misc. 2d 459, 586 N.Y.S.2d 846, 850 (1992) (summary judgment granted in favor of consumer reporting agency that had furnished a consumer report to an otherwise legitimate subscriber who had certified that it would seek reports for permissible purposes and where there was no showing that the agency was aware that the subscriber was accessing reports for improper purposes); *Dobson v. Holloway*, 828 F. Supp. 975 (M.D. Ga. 1993) (same); *Anderson v. Ray Brandt Nissan, Inc.*, 1991 U.S. Dist. LEXIS 14550, 1991 WL 211627 (E.D. La. Oct. 9, 1991) (same). [4] Similarly, because of the certifications made by Credit Bureau to Equifax as to compliance with the FCRA and the absence of any evidence that Equifax was aware that Credit Bureau or any of Credit Bureau's subscribers were in violation of the FCRA, Equifax acted reasonably as a matter of law.

---

**FOOTNOTES**

[4] Plaintiff attempts to distinguish these cases by pointing out that the Sessoms' 1984 contract with Credit Bureau stated that Street & Co. was in the business of insurance and business investigations, not skip-tracing, and that Credit Bureau may never have made a site visit to the Sessoms' home to verify their permissible purpose. These facts may have been significant if there was evidence that the Sessoms operated a business which did not have a permissible purpose for accessing consumer reports and that Credit Bureau was unaware of this activity. However, it is undisputed that Credit Bureau understood that Street & Co. was operating as a skip-tracing business, which is permissible under the FCRA, and that Credit Bureau never had notice that Street & Co. had ever accessed a report for an improper purpose. Thus, even if Credit Bureau may have failed to verify Street & Co.'s business purpose in 1984, that failure in no way caused any damage to Plaintiff in this case.

---

**[*15]** In addition to claiming Equifax and Credit Bureau were negligent with respect to the authorization and oversight of Street & Co., Plaintiff also argues that Equifax and Credit Bureau were negligent with respect to computer security. Plaintiff bases this argument on two points: first, the fact that the Sessoms denied accessing Plaintiff's report despite the fact that the billing records indicate that Plaintiff's report was accessed with Street & Co.'s password and codeword; second, the testimony of an expert on computer security, Robert Biggerstaff, who concludes that the computer systems utilized by Equifax and/or Credit Bureau are inadequate.

While it is true that the Sessoms have denied accessing Plaintiff's report, there is simply no evidence in the record to support the argument that Plaintiff's report was accessed by an unknown party breaking into the computer system. The report was pulled using Street & Co.'s password and codeword. Credit Bureau billed Street & Co. for the report and Street & Co. paid the bill. The Sessoms had never complained that their password had been stolen and never complained that they were billed for reports that they did not access. Indeed, one of **[*16]** Plaintiff's own experts, David Szwak, and Plaintiff himself have stated that they believe that Sessoms in fact pulled the report. Moreover, if some unknown party had broken into the

computer system to access credit information, the most likely motive, as Plaintiff himself suggests, would have been identity theft. However, Plaintiff admits that there has been no unauthorized activity on any of the accounts listed on his October 1996 report. There is no evidence that any of the information on Plaintiff's report has been misused. In short, Plaintiff's speculation that an unidentified third party may have broken into Equifax's and Credit Bureau's computer system and stolen Plaintiff's credit information is not sufficient to withstand summary judgment. Accordingly, the court finds that Equifax and Credit Bureau are entitled to summary judgment on Plaintiff's negligence claim.

The court now turns to Plaintiff's claim that Equifax and Credit Bureau willfully violated the provisions of the FCRA. HN4 To establish willfulness, a plaintiff must show that the defendant acted "under circumstances which amount to a willful or wanton disregard of the plaintiff's rights" under the FCRA. [*17] *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987).

Here, Plaintiff has not presented any affirmative evidence that either Equifax or Credit Bureau willfully violated any provision of the FCRA. Instead, Plaintiff contends that these Defendants have willfully violated the FCRA as a result of their willful blindness to the problem of improper access to consumer reports. This argument is based primarily on a theory advanced by one of Plaintiff's experts, David Szwak, an attorney who routinely represents plaintiffs in FCRA cases. However, as previously discussed, it is undisputed that Equifax and Credit Bureau follow FCRA certification procedures which courts from numerous jurisdictions have uniformly held are reasonable as a matter of law. In view of these circumstances and in the absence of any evidence that either Equifax or Credit Bureau have willfully violated any provision of the FCRA in this case, the court finds that Equifax and Credit Bureau are entitled to summary judgment on Plaintiff's claim for willful violations of the FCRA.

CONCLUSION

For the foregoing reasons, the court will (1) grant Credit Bureau of Greater Greensboro, Inc.'s motion for [*18] summary judgment [Doc. # 47]; (2) grant Equifax Credit Information Services, Inc.'s motion for summary judgment [Doc. # 49]; (3) deny Plaintiff's motion to strike Roch Smith, Jr., as an expert [Doc. # 53]; (4) deny Credit Bureau of Greater Greensboro, Inc.'s and Equifax Credit Information Services, Inc.'s motions to strike Robert Biggerstaff and David Szwak as experts [Docs. # 63 and # 60]; and (5) deny Equifax Credit Information Services, Inc.'s and Credit Bureau of Greater Greensboro, Inc.'s motions for sanctions pursuant to Rule 11 [Docs. # 87, 74].

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

Frank W. Bullock, Jr.

United States District Judge

March 16, 1998

*ORDER and JUDGMENT*

BULLOCK, Chief Judge

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion to strike Roch Smith, Jr., as an expert [Doc. # 53] is DENIED;

IT IS FURTHER ORDERED that Credit Bureau of Greater Greensboro, Inc.'s motion to strike

Robert Biggerstaff and David Szwak as experts [Doc. # 63] is DENIED;

IT IS FURTHER ORDERED that Equifax Credit Information **[\*19]** Services, Inc.'s motion to strike Robert Biggerstaff and David Szwak as experts [Doc. # 60] is **DENIED**;

IT IS FURTHER ORDERED that Credit Bureau of Greater Greensboro, Inc.'s motion for sanctions pursuant to Rule 11 [Doc. # 74] is **DENIED**;

IT IS FURTHER ORDERED that Equifax Credit Information Services, Inc.'s motion for sanctions pursuant to Rule 11 [Doc. # 87] is **DENIED**;

IT IS ORDERED AND ADJUDGED that Credit Bureau of Greater Greensboro, Inc.'s motion for summary judgment [Doc. # 47] is **GRANTED**, and this action is **DISMISSED** with prejudice as to Credit Bureau of Greater Greensboro, Inc.; and

IT IS FURTHER ORDERED AND ADJUDGED that Equifax Credit Information Services, Inc.'s motion for summary judgment [Doc. # 49] is **GRANTED**, and this action is **DISMISSED** with prejudice as to Equifax Credit Information Services, Inc.

Frank W. Bullock, Jr.

United States District Judge

March 16, 1998

Service: **Get by LEXSEE®**
Citation: **1998 U.S. Dist. Lexis 8154**
View: Full
Date/Time: Tuesday, November 22, 2011 - 6:53 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

In About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2011 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.