**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DEC - 8 2011

GREGORY C. LANGHAM
CLERK

Civil Action No. 11-cv-02430-WYD-KMT

LUCAS DEMAESTRI,
    Plaintiff.

-v-

VERIFACTS INC.,
    Defendant.

---

## PLAINTIFFS MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

---

Plaintiff asks the court to deny Defendant's motion for summary judgment and states the following:

## CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCiv.R 7.1

The undersigned certifies that, pursuant to D.C.COLO.LCivR 7.1A, the undersigned believes conferral with Defendant on a Motion in Opposition to Defendant's Motion for Summary Judgment would be pointless.

Plaintiff Lucas DeMaestri is pro se, is not an attorney and respectfully asks the court to afford him some leeway for any mistakes, imperfections or technicalities in his pleadings. In _Puckett v. Cox, (456 F2d 233 (1972 Sixth Circuit USCA)_, it was held that a pro-se pleading requires less stringent reading than one drafted by a lawyer. Also, _See Haines v. Kerner 92 Sct 594_, See _Hulsey v. Ownes 63 F3d 354 (5th Cir 1995), See, Hall v. Bellmon 935 F.2d 1106 (10th Cir. 1991)._

## I.  INTRODUCTION

1.  Plaintiff is Lucas DeMaestri (hereinafter Plaintiff); Defendant is VERIFACTS INC., (hereinafter Defendant).

2.  On September 15, 2011 Plaintiff sued Defendant for violations of the Fair Credit Reporting Act (hereinafter FCRA), and the Fair Debt Collection Practices Act (hereinafter FDCPA). See, docket No. 1.

3.  On October 22, 2011 Defendant  filed MOTION for summary judgment. See, docket No. 11.

4.  On October 24, 2011  Defendant  filed an Original Answer. See, docket No. 9.

5.  Summary Judgment is improper in this case because there are genuine issues of material fact on each element of Plaintiff's cause of action for violations of the FCRA: no permissible purpose to obtain plaintiff's consumer reports, and FDCPA: Use of false representation or deceptive means to collect or attempt to collect any debt and unfair or unconscionable means to collect or attempt to collect any debt.


## II.  RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS

1.  **Disputed in part.**

2.  **Undisputed.**

3.  **Disputed**.

4.  **Disputed in part**.

5.  **Disputed.**

6.  **Disputed.**

7.  **Disputed.**

8. **Disputed.**

9. **Disputed**.

### III. STANDARD OF REVIEW

1.   Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. *See*, Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).*

2.   A defendant who seeks summary judgment on a Plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F3d 1245, 1251 (1st Cir. 1996); See, Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2552-53.* Defendants cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate an absence of genuine factual dispute. *See, Celotex Corp. 477 U.S. at 327, 106 S.Ct. at 2555.* Only if defendants meet their burden is plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

3.   In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *See, Garcia v. Pueblo Country Club, 229 F.3d 1233, 1236-37 (10th Cir. 2002).*

4.   In applying the standard, the Court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing the summary

judgment." *See*, *Atlantic Richfield v. Farm Credit Bank*, 226 F. 3d. 1138, 1148 (10th Cir. 2000) (quoting *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999)).

## IV. ARGUMENT

1. Defendants motion for summary judgment is premature and should be stricken as discovery in this case has not been conducted or concluded.

2. The "Affidavit of Sheila Gabler", an employee of Defendant States "Verifacts is in the business of providing creditors and debt collectors with "skip tracing" information." ¶3 However, "skip tracing" information is provided solely to help "debt collectors" as defined in the FDCPA to collect debts. Therefore, Defendant stating "Verifacts is in the business of providing creditors and debt collectors with "skip tracing" information.", is simply a clever use of terms intended to hide the true nature of its business operations as the same could be said by stating, "Verifacts is in the business of assisting debt collectors in collecting debts by providing information about alleged debtors", as Defendant's only clients are debt collection agencies.

3. The "Affidavit of Sheila Gabler", an employee of Defendant, states "Verifacts does not engage in the practice of collecting debt owed or due, or asserted to be owed or due, to another. The principle purpose of Verifacts' business is to provide skip tracing information for its clients."¶4 Defendant claims not to engage in the practice of collecting debts, and although it may appear from its organizational label that Defendant is not engaged in the practice of collecting debts, and although a close question, Defendant's operations could fall within the definition of a "debt collector" as defined in the FDCPA and is a question that should be addressed case by case. If Defendant's only clients are debt collection agencies, so

its only income is derived from the debt collection industry, and Defendants service is specifically designed to help debt collection agencies in their business of collecting debts, then quite conceivably the nature of such activities could be construed as working in tandem with debt collection agencies to collect debts or as indirect attempts to collect debts.

"Although a close question, the Court concludes that Verifacts does fall within the definition of "debt collector" and **therefore is subject to the FDCPA**." *See, Baker v. TransUnion LLC, et. al., 2010 U.S. Dist. LEXIS 51425, * 19-20 (D. Ariz. May 25, 2010)(Emphasis added).*

"The Ninth Circuit has explained that determination of whether an entity falls within the definition of "debt collector" for purposes of the FDCPA depends not on the entity's organizational label, but rather on the nature of its activities." *See, Baker v. TransUnion LLC, et. al., 2010 U.S. Dist. LEXIS 51425, * 19-20 (D. Ariz. May 25, 2010).*

4.   The only evidence offered by the Defendant is the "Affidavit of Sheila Gabler", an employee of Defendant, which states "Verifacts obtained location information regarding Mr. DeMaestri in order to provide this information, to two of Verifacts' clients, which are both debt collection agencies."¶5  Location information could have reasonably been obtained by Defendant in the first few instances Defendant obtained Plaintiff's consumer reports with maybe a subsequent follow up inquiry at a later date to verify the address had not changed However, this does not explain why Defendant obtained Plaintiffs consumer report on five (5) separate occasions. In addition, there is nothing on the record or annexed to the "Affidavit of Sheila Gabler" which establishes any type of relationship, debt, "account", contract, agreement, or the like between Defendant's two alleged "debt collection agency" clients and Defendant, or Plaintiff.

5.   The only evidence offered by the Defendant is the "Affidavit of Sheila Gabler", an employee of Defendant, which states "Both of Verifacts' clients in this case certified that any information they obtained from Verifacts would be used in connection with a credit transaction involving the consumer and involving the extension of credit, or in connection with the review or collection of an account of the consumer."¶6  However, there is nothing on the record or annexed to the "Affidavit of Sheila Gabler" which establishes any type of relationship, debt, "account", contract, agreement, or the like between Defendant's two alleged "debt collection agency" clients and Defendant, or Plaintiff. In addition, if Defendant did have two "debt collection agency" clients, there is nothing on the record or annexed to the "Affidavit of Sheila Gabler" which establishes that either of Defendant's two "debt collection agency" clients ever made such Certifications.

6. The "Affidavit of Sheila Gabler", an employee of Defendant, states "The inquires into Plaintiff's consumer credit history were for no other purpose than to provide its clients with location information relation to Mr. DeMaestri pursuant to the certification referenced in paragraph No. 6"¶7  Location information could have reasonably been obtained by Defendant in the first few instances Defendant obtained Plaintiff's consumer reports with maybe a subsequent follow up inquiry at a later date to verify the address had not changed. However, this does not explain why Defendant obtained Plaintiffs consumer report on five (5) separate occasions.

7.   The "Affidavit of Sheila Gabler" states "The Consumer reporting agencies from whom Verifacts obtained the information posted "soft" inquires on Plaintiff's consumer file. That means that the inquires are only visible to the consumer and not to creditors or other customers of the consumer reporting agencies. As such, these types of "soft" inquires do not

influence a consumer's credit score or credit report"¶8  The FCRA does not make a

distinction between so called "soft" or "hard" credit inquires. The fact that the inquiry is only

visible to the consumer is irrelevant, as Defendant viewed it and any unauthorized inquiry

into a consumer report is a violation of the FCRA and a violation of the consumer's privacy,

and is an actionable offense. In addition, whether or not Plaintiff's credit score was

influenced by Defendants actions is irrelevant, as the FCRA does not require a Plaintiff to

suffer any actual damage in order to collect statutory damage awards when the law and the

consumers privacy are violated.

"... a plaintiff that claims no actual harm could obtain statutory and punitive

damages for a willful violation of the Fair Credit Reporting Act (§ 1681n(a))." *See, 540*

*U.S. at 620 (2004); cf. Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2207 (2007)*

"Because FCRA's private right of action does not require proof of actual damages as a

prerequisite to the recovery of statutory damages for a willful violation of the Act, we reverse."

See, *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d. 702 (6th Cir. 2009)

8.  The "Affidavit of Sheila Gabler" does nothing more than refer to facts not in evidence

and refers to events regarding the alleged "account", debt, agreement, contract, or the like

where there is no verified evidence of said alleged facts or events before the court.

9.  The statements in the "Affidavit of Sheila Gabler" are nothing more than hearsay, are not

supported by any verified documentation whatsoever and should not be considered by the

court.

10.  Defendant makes numerous claims in its motion for summary judgment that the FDCPA

does not apply to it. However, if you visit the website of Defendant @ www.skiptracers.com

and Click on "Technology and Quality Assurance", Defendant assures its compliance with

the FDCPA **(See, "exhibit B" annexed)**. If Defendant really believes the FDCPA does not

apply to it, then why has it taken steps to assure compliance with the FDCPA? In *Romine v. Diversified Collection Servs., Inc.* the court stated "An entity must therefore comply with the FDCPA if it (1) is principally in the business of debt collection or (2) regularly attempts to collect debts, either directly or **indirectly**. *See Romine v. Diversified Collection Servs,. Inc., 155 F .3d 1142, 1145 (9th Cir. 1998)(Emphasis added).* Why would any entity take steps to assure compliance with the FDCPA if it really believed it is not, (1) principally in the business of debt collection or (2) not regularly attempting to collect debts, either directly or indirectly? This makes no logical sense, as a person would not take steps to assure compliance with a law or regulation that does not apply to it. For example, I need not comply with the laws and regulations of Realtors because I am not a Realtor, therefore those laws and regulations do not apply to me.

11. There is not one document in the record submitted by the Defendant as <u>verified evidence</u> to show the existence of any alleged relationship, "account", debt, agreement, contract or the like indicating what type of "account", debt, agreement, contract or the like it is, who the alleged original creditor is, its origination date, any amounts that may be owed, or any other identifying information regarding the alleged "account", debt, agreement, contract or the like, which Defendant's two alleged "debt collection agency" clients should have provided to Defendant in order for Defendant to have believed it had a permissible purpose for the inquiries.

12. Even if Defendant had submitted documentation regarding the alleged "account", debt, agreement, contract or the like of Lucas DeMaestri, collection of a debt is not a "permissible purpose" to obtain a consumer report under 15 U.S.C. § 1681b(a)(3)(A). Defendant has not entered into the record any proof or documentation of the existence of a **demand deposit,**

**savings deposit, or other asset account** of Lucas DeMaestri that would have allowed for "review of an account" to obtain his consumer reports on multiple occasions. Section 1681b of the FCRA provides a consumer reporting agency may furnish a consumer report under the following circumstance:

(3) To a person which has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an **account** of the consumer. 15 U.S.C. § 1681b(a)(3)(A) (emphasis added). Notice, it does not say "debt", and the term "account" is defined.

Section 1681a(r)(4) of the FCRA defines the term "account" as follows:

(4) There terms "account" and "electronic fund transfer" have the same meanings as in section 903 of the Electronic Fund Transfer Act.

Section 903. Definitions of the Electronic Fund Transfer Act defines the term "account" as follows:

the term "account" means **a demand deposit, savings deposit, or other asset account** (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement (Emphasis added). Notice, it does not say "debt", or "evidence of debt a debt collection agency purchased or was assigned".

13.   Congress enacted the FCRA to promote efficiency in the Nation's banking system and to **protect consumer privacy, not** to provide debt collectors who purchase evidence of debt, with a means to freely access consumers' credit profiles to determine the value of the evidence of debt they purchased or to attempt to collect a debt, or for any other purposes other than those specifically defined under 15 U.S.C. § 1681a(r)(4).

"Congress enacted the FCRA in 1970 to **promote efficiency in the Nation's banking system and to protect consumer privacy**. As relevant here, the Act seeks to accomplish those goals by requiring credit reporting agencies to maintain reasonable procedures designed to assure maximum possible accuracy of the information contained in credit reports and **to limit the furnishing of such reports to certain statutorily enumerated purposes**." *TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001) (Emphasis added).*

"In construing the scope and effect of a statute, [the court must] seek out the intent of the legislature in voting its passage. Perhaps the best guide to intent is declaration of policy which frequently forms the initial part of an enactment". *St. Luke's Hosp. v. Industrial Comm'n, 142 Colo. 28, 32, 349 P.2d 995, 997 (1960), § 602. Congressional findings and statement of purpose 15 U.S.C. § 1681(b).*

"When interpreting statutes, our primary task is to give effect to the intent of the general assembly and the purpose of the legislative scheme. *Id. (citing People v. Yascavage,101 P.3d 1090, 1093 (Colo. 2004); Klinger, 130 P.3d at 1031).* In doing so, we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all its parts. *People v. Williamson, 249 P.3d 801, 803 (Colo. 2011) (citing People v. Luther, 58 P.3d 1013, 1015 (Colo. 2002)).* Ignoring the statutory definition and interpreting the term "account" to include meanings other than those specifically defined by congress, would

**neither** give effect to the intent of the general assembly, nor consistent, harmonious, and sensible effect to all its parts.

14.   On page 6 of Defendants Motion for summary judgment Defendant states "Courts have routinely held that collection of a "debt" is a permissible purpose for seeking a consumer's credit report." However, Defendant lists four (4) case citations to support its claim and only one of them  actually uses the specific term "debt". Two citations say "account" (as they should), one says "pre-existing debt", and only one citation actually uses the lone term "debt". Debt collectors as defined in the FDCPA 15 U.S.C. 1692a(6) and the like, have cunningly taken a straightforward statutory command and added statutory words and unstated meanings that contravene the legislature's obvious intent (i.e. "account" taken to mean "any evidence of debt they purchase or are assigned") and cloud a statutory text that is clear. Most consumers are ignorant to this so debt collectors have been left unpunished for their violations of the law and consumers privacy. Nobody to Plaintiff's knowledge has ever brought the argument in any decided case that the FCRA does define the term "account" and that evidence of debt purchased by or assigned to a debt collector does not meet the criteria in the definition under 15 U.S.C. 1681a(r)(4), which explains why prior case history does not reflect this fact. **A past practice does not equate to following the law and Ignorance of the law is no excuse.**

"We have long recognized the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *See, Jerman v. Carlisle*, *538 F.3d 469, 471 (6th Cir. 2008)*

15.   The language of the FCRA 15 U.S.C. § 1681b(3)(A) is unambiguous, straightforward and very clear, therefore there is no need to resort to legislative history to

cloud a statutory text that is clear. The FCRA clearly defines an "account" and, most debts do not meet the criteria in the definition under 15 U.S.C. § 1681a(r)(4) to allow a permissible purpose to obtain a consumer report. There is no need to resort to legislative history to cloud a statutory text that is unambiguous, straightforward and clear.

"As we have repeatedly held, the authoritative statement is the **statutory text, not the legislative history** or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, *545 U.S. 546, 546 (2005)(Emphasis added)*

"Where the language of a statute is unambiguous, as it is here, **we need not, and ought  not, consider legislative history**." *United States v. Gonzales*, *520 U.S. 1, 6, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997)(Emphasis added).*

"Given the straightforward statutory command, there is **no reason to resort to legislative history**." *Connecticut Nat. Bank v. Germain*, *503 U.S. 249, 254, 112 S.Ct. 1146, 1149-1150, 117 L.Ed.2d 391 (1992)(Emphasis added).  Also, Harris v. Garner, 216 F.3d 970, 976 (11th Cir.2000)(en banc).*

"When the import of the words Congress has used is clear, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.") Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, "**we do not resort to legislative history to cloud a statutory text that is clear**" *Ratzlaf v. United States*, *510 U.S. 135, 147-48, 114 S.Ct. 655,  662, 126 L.Ed.2d 615 (1994)(Emphasis added).*

Regardless of its clarity or specificity, we do not give legislative history more weight than unambiguous statutory language because **"[t]he statutory language itself is the principal battlefield** where the warring interests struggle against each other, and **it is to that**

battlefield we should look for the results of the battle." *CBS, Inc. v. PrimeTime 24 Joint Venture, 245  F.3d 1217, 1229 (11th Cir.2001)(Emphasis added), CBS, Inc., 245 F.3d at 1228.*

16. **Expressio unius est exclusio alterius**. The Term "debt" is not synonymous with the term "account" under 15 U.S.C. § 1681b. Congress does not do a vain and useless thing. Congress says in a statute what it means and means what it says there. Congress provides a statutory definition to supersede, not enlarge, the common or ordinary dictionary definition of a word. If congress took the time to define a term, then they did so for a reason.

"We must assume that the legislature did **not** intend to do a vain and useless thing." *Williams v. Commonwealth, 190 Va. 280, 293, 56 S.E.2d 537, 54 (1949)(Emphasis added).*

"In interpreting a statute a court should always turn to one, cardinal canon before all others.... [C]ourts must presume that a **legislature says in a statute what it means and means in a statute what it says there.**" *Connecticut Nat'l Bank v. Germain, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)(Emphasis added).*

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 109 S. Ct. 2166, 2172 (1989)*

"When a statute includes an explicit definition, **we must follow that definition**, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart, 530 U.S. 914, 942, 120 S.Ct. 2597, 2615 (2000)(Emphasis added).*

"It is axiomatic that the statutory definition of the term **excludes unstated meanings of that term**" *Meese v. Keene, 481 U. S. 465, 484-485 (1987) (Emphasis added).*

". . .Statutory definitions control the meaning of statutory words, . ." *Lawson v. Suwannee Fruit & Steamship Co., 336 U.S. 198, 201 (1949).*

"As a rule, `a definition which declares what a term "means" ... **excludes any meaning that is not stated'** " *Western Union Telegraph Co. v. Lenroot, 323 U. S. 490, 502 (1945)(Emphasis added).*

"[A] definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions **to apply it to the exclusion of all others.**" *Fox v. Standard Oil Co. of N. J., 294 U. S. 87, 95-96, 55 S.Ct. 333, 336 (1935)(Emphasis added)*

"**Expressio unius est exclusio alterius.** A maxim of statutory interpretation meaning that **the expression of one thing is the exclusion of another.** *Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Newblock v. Bowles, 170 Okl. 487, 40 P.2d 1097, 1100(Emphasis Added).*

17.   For the Defendant to successfully argue for summary judgment they must show that there are no material fact issues as to any elements of the Plaintiff's cause of action where the only element is whether Defendant had permissible purpose to obtain Plaintiff's consumer reports.

18.   The Defendant must therefore prove **through evidence before the court** rather than conclusory statements or speculation that it had a permissible purpose to obtain the Plaintiff's consumer reports on multiple occasions.

19.   The statements in Defendant's motion attempting to use the "Affidavit of Sheila Gabler" with no other evidence to support it as a grounds for summary judgment are conclusory without question and cannot support a motion for summary judgment. See *Celotex Corp. 477 U.S. at 327, 106 S.Ct. at 2555.*

## V.  OBJECTIONS

1.  Defendants motion for summary judgment is premature and should be stricken as
discovery in this case has not been conducted or concluded and the evidence submitted in
support of Defendant's motion should not be considered by the court because it is not
properly authenticated, is hearsay, and refers to facts not in evidence before the court. The
court should strike the following summary judgment proof:

 **a.  Affidavit**. Defendant relies on the defective "Affidavit of Sheila Gabler".

- Defendant relies on the "Affidavit of Sheila Gabler for **"Summary Judgment
  Evidence"** where the Declaration annexed to the motion is from a Sheila Gabler.

- The Affidavit refers to facts not in evidence before the court.

- The Affidavit has not been authenticated before the court and is hearsay.

- There is nothing on the record or annexed to the "affidavit of Sheila Gabler" which
  establishes any type of relationship, debt, "account", contract, agreement, or the like
  between the two alleged "debt collection agency" clients and Defendant, or Plaintiff,
  or between Plaintiff and Defendant.

## VI.  SUMMARY JUDGMENT EVIDENCE

1.  In support of his response, Plaintiff includes the following evidence in the attached
appendix:

**Affidavits.** The affidavit of Lucas DeMaestri establishes the following facts:

a.  That he has never had any relationship, debt, "account", contract, agreement or the
like with Defendant or Defendant's two alleged "debt collection agency" clients.

b.  That the Plaintiff is not in receipt of nor is there anything on the record which establishes any type of relationship, debt, "account", contract, agreement, or the like between Defendant's two alleged "debt collection agency" clients and Defendant, or Plaintiff, or between Defendant and Plaintiff.

c.  That Plaintiff is not in receipt of nor is there anything on the record establishing that Defendant or its two alleged "debt collection agency" clients acquired any interest in or are the owner of any alleged debt, "account", contract, agreement, or the like of Lucas DeMaestri.

d.  That Plaintiff never gave Defendant or Defendant's two alleged "debt collection agency" clients permission to access his consumer reports on multiple occasions.

e.   That Defendant has proffered nothing to Plaintiff or the Court which establishes a permissible purpose to obtain Plaintiff's consumer report on multiple occasions.

## VII.  CONCLUSION

1 . The Defendant has not met its burden to show there are no material facts at issue for any element of the Plaintiff's complaint.  In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." *Lunch Props., 140 F.3d at 625.*  The Defendant has proffered nothing more than an Affidavit from an employee with statements that reference alleged facts and events where no evidence has been brought before the court to substantiate the alleged claims of a relationship between Defendant and two alleged "debt collection agency" clients, or between Plaintiff and two alleged "debt collection agency", or between Plaintiff and Defendant.

2. The Defendant has proffered nothing to Plaintiff or the Court which establishes that any type of relationship, debt, "account", contract, agreement or the like of a Lucas DeMaestri exits between Defendant and its two alleged "debt collection agency" clients, or between Plaintiff and two alleged "debt collection agency", or between Plaintiff and Defendant.

3. The Defendant has proffered nothing to Plaintiff or the Court which establishes a permissible purpose to obtain Plaintiff's consumer report on multiple occasions.

WHEREFORE, because the Defendant has failed to show there are no issues of material fact before the Court and does not have any evidence before the court of the existence of a valid debt, "account", contract, agreement, or the like of a Lucas DeMaestri, Plaintiff's contention that Defendant had no permissible purpose to obtain his consumer reports is an issue of material fact. Plaintiff respectfully requests the Court deny the Defendant's motion for summary judgment, strike the Defendant's Affidavit and allow Plaintiff's claim to move forward to trial on the merits.

Date: December 6, 2011

Respectfully Submitted,

Lucas DeMaestri, Pro se
9901 E. Evans Ave. #23 D
Denver CO, 80247

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the document above was mailed USPS first class mail to the person(s) listed below:

Steven J. Weinczkowski, Esq.
621 Seventeenth Street, Suite 1800
Denver, Colorado 80293

Plaintiffs Original Signature

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02430-WYD-KMT

"Exhibit A"

LUCAS DEMAESTRI,
    Plaintiff.

-v-

VERIFACTS INC.,
    Defendant.

---

## AFFIDAVIT

---

NOW COMES the Affiant, Lucas DeMaestri of Denver, Colorado who is over the age of 21 years, competent to testify, and declares as follows under penalty of perjury regarding Case No. 11-cv-02430-WYD-KMT, Lucas DeMaestri v. Verifacts Inc.:

1. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that Verifacts Inc., or either of its alleged "debt collection agency" clients, is the owner of any debt, "account", contract, agreement or the like of Lucas DeMaestri as stated in the Affidavit of Sheila Gabler.

2. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that Verifacts Inc., has any relationship, debt, "account", contract, agreement or the like with two alleged "debt collection agencies" or with defendant.

"Exhibit A"

3.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that Verifact's Inc., two alleged "debt collection agencies" acquired any interest in any debt, "account", contract, agreement or the like of Lucas DeMaestri as stated in the Affidavit of Sheila Gabler.

4.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there is any debt, "account", contract, agreement or the like of Lucas DeMaestri that originated with any creditor where there is any balance due and owing that could be collected by Verifacts Inc., or its two alleged "debt collection agency" clients.

5.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there is any permissible purpose for the Defendant in Case No. 11-cv-02430-WYD-KMT, in the United States District Court for the District of Colorado, to obtain the consumer reports of Lucas DeMaestri on multiple occasions.

6.  That Affiant/Plaintiff has never had any type of relationship, debt, "account", contract, agreement or the like with Verifacts Inc., or any of its alleged "debt collection agency" clients to allow a permissible purpose to inquire into its consumer reports, and there is nothing proffered by Defendant to Plaintiff or on the record which establishes such.

7.  That Affiant/Plaintiff at no time gave permission to Verifacts Inc., or any of its alleged "debt collection agency" clients to obtain his consumer reports.

"Exhibit A"

## NOTARY'S VERIFICATION

STATE OF COLORADO              §
                               §
COUNTY OF ~~DENVER~~ ARAPAHOE  §

On this day personally came before me the above-named Affiant, who proved his identity to me to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and stated that he did so with full understanding that he was subject to the penalties of perjury.

## AFFIRMATION

I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true and correct. I hereby further affirm that the basis of these beliefs is my own direct knowledge of the statements described herein.

Further the Affiant sayeth naught.

Signed in Denver, Colorado
December 6, 2011

_____
Lucas DeMaestri

Name of Notary _JULIO C. BARRON_

Signature of notary _____

Commission Expires _MA-I 23, 2012_         seal

JULIO C. BARRON
NOTARY
PUBLIC
STATE OF COLORADO
My Commission Expires
MAY 23, 2012

"Exhibit B"

Home        Programs        Technology and Quality Assurance        Calendar of Events        News
Contact Us

## Technology and Quality Assurance

*Security*
- Controlled physical access
- 24 x 7 video surveillance
- **Latest network & virus scanning, firewall protection, intrusion detection, data encryption and access controls**
- Criminal background and reference checks on all employees
- **PCI DSS (Payment Card Industry Data Security Standard) Certified since 2008**
- ISO 17799 Compliance "Industry Best Practices"

**Compliance**
- **Federal Trade Commission - Section V**
- FDCPA
- Gramm-Leach-Bliley Act
- FCRA
- **Licensed, bonded, insured**